**TEXAS STATE BOARD OF PHARMACY,**
Appellant,

v.

**George Clinton MARTIN, Appellee.**

No. 10820.

Court of Civil Appeals of Texas.

Austin.

Feb. 8, 1961.

Rehearing Denied Feb. 22, 1961.

Will Wilson, Atty. Gen., John Reeves, Asst. Atty. Gen., Pat Bailey, Austin, of counsel, for appellant.

Raymond E. Ehrlich, Pharr, for appellee.

GRAY, Justice.

Appellee, George Clinton Martin, sued the Texas State Board of Pharmacy and its individual members in their official capacities for injunctive relief. He alleged that on March 28, 1950 the Board issued him a license to practice pharmacy in this State; that annually thereafter he paid the statutory fee for a renewal license and that the Board issued annual renewal licenses to him the last of which was issued for the year 1959. He alleged that on December 29, 1959 he tendered to the Board a United States Postal Money Order for the sum of $10 as payment of his renewal fee together with the required affidavit, and that the Board refused to issue him a renewal license for the year 1960 "even though he has fulfilled all statutory requirements for the issuance of a renewal license." He prayed for a mandatory injunction requiring the Board to issue him a renewal of his license for the year 1960.

The Board answered by special exception, by special and general denials. The Board admitted receipt of the $10 renewal fee and the affidavit and its refusal to issue the renewal license. The Board alleged that by letter dated January 7, 1960 it advised appellee that it was not authorized to issue him a renewal license for the reason that:

"An examination of the files in this office of George Clinton Martin reveals

that he does not possess the minimum statutory qualifications for the issuance of a renewal license by the Texas State Board of Pharmacy, in that our records do not reveal that George Clinton Martin has attended and graduated from a reputable university, school or college of pharmacy which meets with the requirements of the Texas State Board of Pharmacy."

A trial was had. A judgment granting appellee the relief prayed for was rendered and the Board has appealed from that judgment.

Appellant, the Board, here presents three points. These are to the effect that the trial court erred in rendering the judgment supra because: the judgment in effect requires the Board to issue a renewal license to one who does not possess the minimum statutory qualifications; it was error to hold that the allegations of appellant concerning the minimum statutory qualifications for the issuance of a pharmacy license to appellee were decided adversely to appellant in Cause No. C–2550 in the district court of Hidalgo county, and it was error to require the Board to issue a 1960 renewal license to appellee because he failed to plead or prove that he possessed the minimum statutory qualifications for a license to practice pharmacy in Texas.

The facts show that prior to 1950 appellee was a resident of the State of New Mexico and was licensed to practice pharmacy in that State; that in 1950 the Board issued him a license to practice pharmacy in Texas, and that since that time the license has been timely renewed for each year until 1960— the year in controversy here. The facts also show that appellee timely tendered to the Board the statutory fee and affidavit for a renewal of his license for the year 1960 and that the Board refused to issue the renewal for the reasons stated in its letter supra. Also it is shown that in November, 1958 the Board held a hearing based on allegations that appellee had violated Sec. 12(b) of Art. 4542a, Vernon's Ann.Civ.St., and had cancelled appellee's

license. Appellee appealed from that order to the district court of Hidalgo county which appeal was docketed as Cause No. C–2550 in that court. On May 14, 1959 the order of the Board was set aside and the Board was permanently enjoined from attempting to enforce it. The Board gave notice of appeal from the judgment and on December 30, 1959 the Court of Civil Appeals (San Antonio) sent notice to the parties that the above judgment was on that day affirmed on certificate.

Art. 4542a, Vernon's Ann.Civ.St., vests in the Texas State Board of Pharmacy the authority to administer the law governing the practice of pharmacy in this State. It vests in the Board authority to examine applicants for a license to practice pharmacy in this State, provides qualifications for applicants for license, provides that applicants passing the examination shall be registered by the Board as possessing the required qualifications and who shall receive a license from the Board to practice pharmacy in this State and

"* * * Provided that the State Board of Pharmacy may, in its discretion, upon the payment of Fifty Dollars ($50), grant a license to practice pharmacy to persons who furnish proof that they have been registered as such in some other state or territory, and that they are of good moral character, provided that such other Board in its examination required the same general degree of fitness required by this State, and grants the same reciprocal privileges to pharmacists of this State."

The section further provides that a license shall not be received by any person who is a member of or is affiliated with the communist party or with any group that believes in the overthrow of the United States Government by any illegal means.

Section 12 of Art. 4542a supra in part provides:

"Sec. 12. The State Board of Pharmacy may in its discretion refuse to

issue a license to any applicant, and may cancel, revoke, or suspend the operation of any license by it granted for any of the following reasons:

\* \* \* \* \* \*

"(b) That said applicant or licensee is guilty of any fraud, deceit, or misrepresentation in the practice of pharmacy or in his seeking admission to such practice; \* \* \*"

Section 14 of the above statute provides:

"Sec. 14. (a) On or before the first day of each year every licensed pharmacist in this State shall pay to the Secretary of the State Board of Pharmacy an annual renewal fee of Ten Dollars ($10) for the renewal of his license to practice pharmacy for the current year. On receipt of said renewal fee, the Board shall issue an annual renewal certificate bearing the number of the license, the year for which renewed and other information for the records of the Board which said Board may deem necessary. When a pharmacist shall have failed to pay his annual renewal fee before March 1st of each year, said license shall be suspended, and such person in order to be reinstated shall be required to pay one (1) annual renewal fee as a penalty, in addition to the sum of all fees such person may be in arrears. Said renewal fee shall be due on January 1st of each year, and shall become delinquent on March 1st of each year."

Section 14 makes no provision for any notice or hearing but provides that "every licensed pharmacist in this State shall pay \* \* \*." and further that

"On receipt of said renewal fee, the Board shall issue an annual renewal certificate bearing the number of the license, the year for which renewed and other information for the records of the Board which said Board may deem necessary."

■■ Appellant Board here seeks to uphold its refusal to renew appellee's license under the provisions of Sec. 12(b) supra, or specifically because appellee does not possess the required qualifications to receive a license in this State. The applicable provisions of the statute (Sec. 12) to this question provides for a hearing by the Board after ten days notice with the right of appeal by the party whose license has been refused, cancelled, revoked or suspended. It does not apply to the renewal of the license of a "licensed pharmacist," (Sec. 14) the Board being given discretion in the former but not in the latter.

The issue as to cancellation of appellee's license under Sec. 12(b) supra, for the reasons there alleged was settled adversely to appellant by the judgment in Cause No. C–2550 which judgment became final in 1959. Therefore at the time he tendered his fee and affidavit appellee was a "licensed pharmacist" and entitled upon payment of the required fee and filing affidavit to receive a renewal for the year 1960.

■ As already stated section 14 makes no provision for notice for hearing. None was had. In fact the only notice appellee had was the letter supra which advised him that a renewal of his license was refused. To give the Board authority to act as it has in this instance would render such action unconstitutional and void as a violation of due process. Garner v. Texas State Board of Pharmacy, Tex.Civ.App., 304 S.W.2d 530. Er. ref. As is shown supra appellee, in applying for a renewal of his license, met all statutory requirements. When he did this the Board did not have authority, by ex parte proceedings, to deny the renewal. Murphy v. Mittelstadt, 145 Tex. 451, 199 S.W.2d 478.

■ In this proceeding appellee was not required to plead and prove that he possessed the statutory requirements for the issuance of a license to practice pharmacy in this State. He was seeking a renewal of his license and it was only necessary for him to meet the statutory requirements for such renewal.

While the conclusion that the judgment in Cause C–2550 decided the allegations as to the minimum statutory qualifications possessed by appellee for a pharmacist's license were decided adversely to appellant in that cause, as those matters were put in issue in that cause, appears inescapable, that matter is not necessary to our decision here. The proceedings here concern the renewal of an existing license and not the issuance of a license.

It is our opinion that because appellee, at the time he tendered the fee and affidavit to the Board, was a licensed pharmacist the Board was required to issue to him a renewal license for the year 1960. Such renewal however does not bar the Board from proceeding under section 12, supra, except insofar only as Cause No. C–2550 adjudicated the matters there in controversy.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

Should a person who misrepresents his qualifications in order to procure a license to practice pharmacy be entitled to a renewal of such license upon payment of the statutory fee when he did not possess at the time such license was issued or at the time its renewal was sought the statutory requirements for the issuance of such license?

The majority says "Yes." My answer is "No."

Upon oral presentation of this case the substance of the following hypothetical question was put to counsel for appellee:

If an applicant for a license to practice pharmacy stated in his application that he had no knowledge of pharmacy, did not know one pill from another, and could not distinguish calomel from strychnine, but through oversight had been issued a license by the Board, the Board belatedly taking note of such facts, would he be entitled to a renewal of his license upon timely tender of the renewal fee?

Counsel's answer was in the affirmative. Exaggerated as the illustration may be, it is basically the holding of the majority herein.

If this is correct, then such licensee could practice pharmacy until he committed an act for which his license could be revoked under Section 12, Art. 4542a, V.A.C.S. In the meantime the public would be truly acting at its peril in dealing with such person.

The situation here, from a moral point of view, is even worse than that stated in the hypothetical question. There the applicant stated the truth in his application. Here the applicant obtained his license upon false statements made in his application.

It was stipulated by the parties that appellee has never possessed the minimum requirements entitling him to be licensed as a pharmacist or to practice pharmacy in this State.[1]

Under these circumstances, the license issued appellee by the Board was in excess of the authority conferred by law upon the Board and, in my opinion, such action of the Board and the license issued by it were null and void.

The legal effect of this conclusion is that appellee has no license to renew.

The soundness of these views is supported by the following quotation from 73 C.J.S. Public Administrative Bodies and Procedure § 71, p. 398:

"In general the power or duty of officers or agencies to act on applications and grant or issue licenses, permits, certificates of convenience and

1. The exact stipulation reads in part:
"It is stipulated by and between the parties hereto that the plaintiff, George Clinton Martin, did not attend or graduate from any recognized school or college of pharmacy."

necessity, or similar authorizations depends on the provisions of the organic act, statute, or ordinance by which they are authorized or required to act; and as to such matters the designated officer or agency has only the powers and authority thereby conferred on him or it. Administrative officers or agencies have no power to grant a license, permit, or authorization unless the conditions specified by statute or other controlling act exist, and in the granting or refusal of an application their power is confined to, and limited by, prescribed standards or rules of conduct. A permit issued in violation of an ordinance by an officer or agency lacking the power to alter or vary the ordinance is void. A board is not estopped to deny the renewal of a license, which, due to a mistake, it granted in violation of law."

In re Whitford's Liquor License, 166 Pa. Super. 48, 70 A.2d 708, 710, cited to the above quotation from C.J.S., the Superior Court of Pennsylvania in discussing the authority of the Liquor Control Board to refuse to renew a license granted through error stated: "Granting the license was an illegal act, and the board had no power to perpetuate the illegality by renewing it."

The principal authority cited by the majority to sustain its decision is Murphy v. Mittelstadt, 145 Tex. 451, 199 S.W.2d 478, is not in point. There it was stipulated that the operator of a school of beauty culture who was seeking a renewal of her license as such was "a duly licensed and certified operator" of such school.

The facts here are exactly opposite. Appellee has never been "duly" licensed as a pharmacist.

To permit appellee to continue the practice of pharmacy would be the granting by the courts of an undeserved privilege in violation of law and one which the Legislature of this State has repeatedly refused to extend to others similarly situated.[2]

The standards prescribed by the Legislature for pharmacists should be respected. They should not be whittled away by anyone, including the courts.

In my opinion, the Board should be sustained in its attempt to enforce these laws relating to a matter vitally affecting the public interest, and in its effort to take from appellee the continuing benefits of a license to which he was never entitled and which he obtained only by misrepresentation.

I respectfully dissent.

---

2. S.B. 293, 49th Leg. (1945), H.B. 731, 50th Leg. (1947), H.B. 82, 51st Leg. (1949), S.B. 74, 51st Leg. (1949), S.B. 191, 52nd Leg. (1951). None of these bills was enacted into law.